UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

CHARLES BLUNT #134927,

    Plaintiff,

v.

A. ORTIZ, et al.,

    Defendants.
_____/

Case No. 2:20-cv-14

Hon. Jane M. Beckering
U.S. District Judge

## REPORT AND RECOMMENDATION

### I.  Introduction

This Report and Recommendation (R&R) addresses a motion for summary judgment filed by Defendant Corrections Officer (CO) Ortiz. (ECF No. 31.)

Plaintiff – state prisoner Charles Blunt – filed this civil rights action pursuant to 42 U.S.C. § 1983 on April 6, 2020. (ECF No. 1.) In his verified complaint, Blunt alleges that while he was confined at the Chippewa Correctional Facility (URF) in Kincheloe, Michigan on December 21, 2018, CO Ortiz (1) used excessive force on two occasions when returning Blunt to his cell and (2) retaliated against Blunt for threatening to file a grievance against CO Ortiz.[1] Specifically, Blunt alleges that after he attended a misconduct hearing and was being escorted back to segregation,

---

[1] In his complaint, Blunt set forth claims against another corrections officer, CO King, and an unknown Nurse. (ECF No. 1, PageID.2.) In a screening opinion issued March 4, 2020, this Court dismissed CO King and the unknown Nurse for failure to state a claim, leaving only Blunt's claims against CO Ortiz. (ECF No. 5.)

CO Ortiz jerked a restraint strap and injured Blunt's wrist. (ECF No. 1, PageID.5.) Then, when Blunt and Ortiz returned to Blunt's cell, Blunt told CO Ortiz he intended to file a grievance. (*Id.*) Ortiz then pulled Blunt into the cell door with the restraint strap. (*Id.*, PageID.5-6.) Blunt alleges that his back was injured from being pulled against the cell door. (*Id.*, PageID.6.)

CO Ortiz now moves for summary judgment. (ECF No. 31.) CO Ortiz asserts that Blunt cannot demonstrate the subjective or objective component of his excessive force claims, and that the claims are precluded by the findings of a hearing officer in a major misconduct hearing related to the incident. (ECF No. 32, PageID.103-109.) CO Ortiz further argues that the Court should dismiss Blunt's retaliation claim because Blunt is unable to demonstrate a causal connection between the protected conduct and the adverse action; CO Ortiz would have taken the same action regardless of Blunt's protected conduct. (*Id.*, PageID.110-111.) Finally, CO Ortiz contends that he is entitled to qualified immunity. (*Id.*, PageID.113-114.)

In response, Blunt restates the basic facts from his complaint and asserts that there is camera footage of the December 21, 2018 incident that would support his claims and allow a jury to find for him. (ECF No. 33, PageID.181.)

The undersigned respectfully recommends that the Court grant CO Ortiz's motion for summary judgment with respect to Blunt's excessive force claims because there are no genuine issues of material fact and construing the facts in the light most favorable to Blunt, Ortiz utilized reasonable force. The undersigned further recommends that the Court deny CO Ortiz's motion for summary judgment with

respect to Blunt's retaliation claim because there is a genuine issue of material fact concerning whether retaliatory motive was the but-for cause of CO Ortiz's adverse action. If the Court accepts this recommendation, Blunt's retaliation claim against CO Ortiz will remain.

II.   **Factual Allegations**

On December 21, 2018, Blunt attended a misconduct hearing. (ECF No. 1, PageID.5.) After the hearing, CO Ortiz escorted Blunt back to his cell. (*Id.*) Blunt stopped walking during the escort to speak with another prison staff member. (*Id.*) According to CO Ortiz's affidavit, and a subsequent misconduct hearing report related to the incident, prisoners are not allowed to stop at any point during an escort unless instructed. (ECF No. 32-6, PageID.159 (Ortiz's Affidavit); ECF No. 32-7, PageID.161 (Misconduct Hearing Report).) After Blunt stopped, CO Ortiz jerked Blunt's restraint strap and yelled to Blunt, "you do not stop and talk to no one." (ECF No. 1, PageID.5.) Blunt says that CO Ortiz injured his wrist by pulling the strap. (*Id.*) Blunt asserts that he told CO Ortiz that his wrist was injured, and CO Ortiz responded by saying, "if you stop again, I'll injure more than your wrist." (*Id.*) Ortiz asserts that Blunt "became agitated and began to push against and pull away from [Ortiz], requiring [Ortiz] to use greater control during the escort." (ECF No. 32-6, PageID.159.)

When they returned to Blunt's cell, Blunt informed CO Ortiz that he intended to file a grievance. (ECF No. 1, PageID.5.) CO Ortiz asserts that Blunt told him at this time, "take these cuffs off me and I will beat your ass," which CO Ortiz perceived

3

to be a threat. (ECF No. 32-6, PageID.159.) Blunt then stepped into the cell but was pulled back by CO Ortiz. (*Id.*) Blunt says this caused him to fall against the cell doorjamb where he braced himself and called for help. (ECF No. 1, PageID.5.) Blunt says that this caused an injury to his back. (*Id.*) Blunt asserts that other prison staff came and removed the restraint strap from CO Ortiz and pulled him away, freeing Blunt. (*Id.*, PageID.6.) However, Hearing Officer O'Brien reviewed video of the incident, and found that CO Ortiz did not have to be restrained by other officers as Blunt claims. (ECF No. 32-7, PageID.161.)

Blunt says that he wanted to see prison health care immediately after the incident but was told by CO King to write a medical kite instead. (ECF No. 1, PageID.5.) That evening, Blunt spoke with a nurse on medical rounds who also told him to write a medical kite. (*Id.*)

Following these events, CO Ortiz issued Blunt a Class I misconduct violation for threatening behavior and assault and battery based on his resistance during the transport.[2] (ECF No. 32-5, PageID.152.) Blunt attended a hearing before Hearing Officer O'Brien on January 2, 2019, regarding this misconduct violation. Blunt was found guilty. (ECF No. 32-7, PageID.161.) During the hearing, the Hearing Officer reviewed a video of the incident and found that it was inconsistent with Blunt's version of events but did not specify the inconsistencies. (*Id.*) The hearing report states that Blunt admitted to "resisting [CO Ortiz] in the performance of his duties"

---

[2]  Blunt does not assert that CO Ortiz filed this misconduct violation in retaliation for Blunt's threat to file a grievance. (ECF No. 1, PageID.5-7.)

4

by pulling away during the escort back to his cell. (*Id.*) The Hearing Officer also confronted Blunt with the fact that the video did not show that staff had to pull Ortiz off of Blunt. (*Id.*) Blunt told the Hearing Officer that he meant to say that staff came to help Ortiz remove Blunt's handcuffs. (*Id.*)

On December 28, 2018, a week after the incident, Blunt was visited by prison healthcare staff on their weekly segregation visit. (ECF No. 32-8, PageID.169-171.) A document presented by CO Ortiz shows that Blunt refused an appointment with the statement, "I'm all good." (*Id.*, PageID.172.) On January 4, 2019, Blunt complained of wrist pain related to handcuffs, but the record of the visit does not reflect when the pain began. (ECF No. 32-8, PageID.165-167.) The nurse noted pain with movement but also noted that Blunt's range of motion was "intact and normal." (*Id.*) Finally, the report states that Blunt had "no complaints of back pain." (*Id.*) In response, the nurse prescribed Tylenol for Blunt's pain. (*Id.*, PageID.166.)

### III.  Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### IV.     Eighth Amendment – Excessive Force

The Eighth Amendment embodies a constitutional limitation on the power of the states to punish those convicted of a crime. Punishment may not be "barbarous", nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981); *Trop v. Dulles*, 356 U.S. 86, 101 (1958). The Eighth Amendment also prohibits conditions of confinement which, although not physically barbarous, "involve the unnecessary and wanton infliction of pain." *Rhodes*, 452 U.S. at 346. Among unnecessary and wanton inflictions of pain are those that are "totally without penological justification." *Id.*

To establish an Eighth Amendment claim, a plaintiff must satisfy both an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Wilson v. Seiter*, 501 U.S. 294, 297-300 (1991). "The objective component requires the pain inflicted to be 'sufficiently serious.'" *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Wilson*, 501 U.S. at 298). "The subjective component focuses on the state of mind of the prison officials." *Williams v. Curtin*, 631 F.3d at 383.

The undersigned first turns to CO Ortiz's argument that Blunt's excessive force claims are barred by Hearing Officer O'Brien's factual findings in Blunt's Class I misconduct hearing on threatening behavior and assault and battery. (ECF No. 32,

6

PageID.106 (citing *Peterson v. Johnson*, 714 F.3d 905, 917 (6th Cir. 2013)).) For a Hearing Officer's determinations to be entitled to preclusive effect, four requirements must be met: "1) the state agency 'acted in a judicial capacity'; 2) the hearing officer 'resolved a disputed issue of fact that was properly before it'; 3) the prisoner 'had an adequate opportunity to litigate the factual dispute'; and 4) if these other three requirements are met, we must 'give the agency's finding of fact the same preclusive effect it would be given in state courts." *Maben v. Thelen*, 887 F.3d 252, 259 (6th Cir. 2018) (quoting *Peterson*, 714 F.3d at 911-13).

There is no question that Hearing Officer O'Brien acted in a judicial capacity in Blunt's Class I misconduct hearing or that the Class I misconduct hearing process gave Blunt an opportunity to litigate any factual dispute. *Peterson*, 714 F.3d at 912-13. And, assuming that the factual disputes were properly before Hearing Officer O'Brien, his findings would be given preclusive effect by the Michigan Courts. *Id.* at 914-17. As such, the preclusive effect of Hearing Officer O'Brien's findings depends upon whether the factual disputes were properly before him at the Class I misconduct hearing. The full text of the misconduct hearing report is below:

| CLASS I MISCONDUCT HEARING REPORT | | | | | H McCollum Rev. 10/10 |
|---|---|---|---|---|---|
| Prisoner 134927 | Prisoner Name Blunt | | Facility Code URF | Lock S 116 | Violation Date 12/21/2018 |
| Charge(s) 1 Threatening Behavior  2 Assault and Battery | | | | | |
| If Charge Changed by Hearing Officer | | | Plea ☐ Guilty  ☒ Not Guilty | | |
| Misconduct Report Read to and Discussed with Prisoner ☒ (check if applies) Hearing Investigation Read to and Discussed with Prisoner ☒ (check if applies) | | | No Hearing Investigation Requested ☐ (check if applies) | | |

**EVIDENCE/STATEMENTS IN ADDITION TO MISCONDUCT REPORT**

The hearing is commenced by the watching of the video that is found to be confidential for the security of the facility. The video is consistent with the report. The prisoner is informed. Unless otherwise noted all documents are one page. The prisoner is present and the misconduct report is reviewed with him along with his statement he came out of the hearing, he saw the PC so he stopped to ask her a question, the officer escorting him said he could not stop and said he had to keep moving, he said he wanted to ask a question, the officer angerly told him he could not stop at all and tugged on him to keep him moving, they walked to the stairs and the officer grabbed his arm roughly so he pulled away at the bottom of the stairs and said he would write him up for a ssault and the officer said is that a threat, and he said it is a promise, they walked to his cell, he walked in and said I will be writing you up, the officer pulled him back into the door assaulting him and the other officers had to run down and restrain the officer as he was so out of control. When it was explained that on video the officer was not restrained by anyone during the escort as he claims he then said he meant staff came down to help the officer get him uncuffed. Prisoner has nothing further to add. No further evidence is needed. Prisoner is informed of the findings, sanctions and sanction dates and told he will receive the report later.

**REASONS FOR FINDINGS**

THREATENING BEHAVIOR: Prisoner Blunt said to Officer Ortiz "take these cuffs off me and I will beat your ass." on 12-21-18 at 0925 hrs. I find that this statement by its very nature expresses an intent to physically harm the officer. Prisoner Blunt's statement is not believed for the following reasons. First, his version as to what happened is not consistent with the video. Second, the officer would have no reason to lie to set him up on this misconduct for this charge because even if he was upset about his stopping earlier he could have just written him for that assault as he was physically resisting the officer on the escort when he stopped so the officer would have no reason to lie to set him up. The Officer is clear and factual in his statement and is found to be credible. The charge is upheld. ASSAULT AND BATTERY: Prisoner Blunt stopped while he was being escorted by Officer Ortiz back to his cell and then pulled away from the officer later during the same esort therefore physically resisting staff in the performance of his duties on 12-21-18 at 0925 hrs. Prisoner Blunt admits to the actions. It is not a defense that he stopped to ask another staff member a question as he is not allowed to stop for any reason during an escort unless told to by staff. It is not a defense that he did not like ho wthe oficer grabbed his arm because he can grieve it but can not pull away. The Officer is clear and factual in his statement and found to be credible.

**PROPERTY DISPOSITION (for contraband see PD 04.07.112)**

The charge is upheld.

**FINDINGS**

| | | | | | |
|---|---|---|---|---|---|
| Charge No. 1 | ☒ Guilty | ☐ Not Guilty | ☐ Dismissed | Reporting Code | 012 |
| Charge No. 2 | ☒ Guilty | ☐ Not Guilty | ☐ Dismissed | Reporting Code | 008 |
| Charge No. 3 | ☐ Guilty | ☐ Not Guilty | ☐ Dismissed | Reporting Code | |
| Charge No. 4 | ☐ Guilty | ☐ Not Guilty | ☐ Dismissed | Reporting Code | |

**DISPOSITION (select one or more) (Toplock & LOP Sanctions End at 6:00 am)**

| | Begins | Ends | | |
|---|---|---|---|---|
| 20 Days of Detention | 01/02/2019 | 01/22/2019 | | Days Credit |
| ___ Days Top Lock | | | | Hours Extra Duty |
| ___ Days Loss of Privileges | | | $ ___ | Restitution |

| Misconduct Hearing Report personally handed to Prisoner by Hearing Officer on this date: ___ (Check if Applies) ☐ | Hearing Report given to Staff Member by Hearing Officer for Delivery to Prisoner this date: 1/2/2019 (Check if Applies) ☒ |
|---|---|
| Date of Hearing 01/02/2019 | Name of Staff Member McCollum |

| Hearing Officer's Name | Hearing Officer's Signature | Date |
|---|---|---|
| O'Brien 052 | [signature] | 1-2-19 |

(*Id.*)

8

The Hearing Report reflects the following determinations of fact: (1) during the December 21, 2018 escort, Blunt threatened to assault CO Ortiz, (2) during this escort, Blunt stopped and pulled away from Ortiz, and (3) prison staff did not have to intervene to pull Ortiz off of Blunt. (*Id.*) Considering that the misconduct charges were threatening behavior and assault and battery during the escort, the undersigned finds that these facts were properly before the Hearing Officer. Accordingly, Hearing Officer O'Brien's determinations are entitled to preclusive effect. Nevertheless, it does not follow that the factual determinations bar Blunt's excessive force claims. Instead, the determinations provide context for the use of force.[3]

The objective component is contextual and therefore varies depending on the claim asserted. *Hudson v. McMillian*, 503 U.S. 1, 8-9 (1992). The degree of harm necessary to satisfy the objective component depends on "contemporary standards of decency." *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). Not "every malevolent touch by a prison guard gives rise to an Eighth Amendment cause of action." *Hudson*, 503 U.S. at 9. Even so, significant injury is not a prerequisite; the extent of an inmate's injury is only one factor for this Court to take into consideration. *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010). The Court also considers "the relationship between the need for the use of force and the amount of force used; . . . any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue;

---

[3] Although Ortiz focuses on the determination that "[Blunt's] version of events is not consistent with the video," that determination is not specific enough to preclude the assertions in Blunt's complaint. (ECF No. 32, PageID.106.)

the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015). These considerations together lead the undersigned to conclude that Ortiz's uses of force were objectively reasonable.

Blunt and CO Ortiz agree that on December 21, 2018, Ortiz was escorting Blunt back to his cell from a misconduct hearing when Blunt stopped to talk to another staff member. (ECF No. 1, PageID.5 (Complaint); ECF No. 32-6, PageID.159 (Ortiz's Affidavit).) Blunt does not contest Ortiz's assertion that prisoners are not permitted to stop mid-escort. (ECF No. 32-6, PageID.159.) When Blunt and Ortiz arrived at Blunt's cell, Blunt walked into the cell. Blunt did not stop at the entrance of the cell to allow Ortiz to remove his handcuffs. (ECF No. 1, PageID.5; ECF No. 32-6, PageID.159.) CO Ortiz then pulled on Blunt's restraint. (ECF No. 1, PageID.5; ECF No. 32-6, PageID.159.) Blunt says that this caused him to fall back into the door, and Ortiz does not seem to assert otherwise. (ECF No. 1, PageID.5.) Nor did Ortiz provide this Court with video contradicting Blunt's assertion, though the Hearing Report reflects that there was video.

Blunt says that by pulling on his restraints during the escort, CO Ortiz injured Blunt's wrists and back. (*Id.*, PageID.5, 6.) Blunt says that he asked to be taken to health care but was told to write a kite. (*Id.*, PageID.6.) When health care made medical rounds, Blunt again complained of his injuries, but was again told to write a kite. (*Id.*) Blunt does not say whether he sent kites to health care, or whether he was eventually seen. But even assuming that Blunt sustained injuries, the record

reflects that the injuries resolved within the week. On December 28, 2018, Blunt refused a health care visit, stating "I'm all good." (ECF No. 32-8, PageID.169-171.)

As an initial matter, the undersigned notes that simply pulling on the restraint strap attached to a prisoner's handcuffs during an escort appears to constitute the sort of *de minimis* use of physical force that falls outside of the Eighth Amendment's prohibition of cruel and unusual punishment. *Hudson*, 503 at 9-10 ("The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'" (quoting *Whitley v. Albers*, 475 U.S. 312, 327 (1986))). But, even assuming that Ortiz utilized more than *de minimis* force, the uncontested facts, together with the factual findings of Hearing Officer O'Brien, demonstrate that Ortiz utilized force "in a good faith effort to maintain or restore discipline" after Blunt repeatedly pulled away during transport, and threatened to assault O'Brien. *Whitley*, 475 U.S. at 320-21 (1986).

Because the undersigned finds that there are no genuine issues of material fact, and that construing the facts in the light most favorable to Blunt, Ortiz's use of force does not "shock the conscience," the undersigned recommends dismissing both of Blunt's excessive force claims.

### V.    First Amendment – Retaliation

In addition to asserting that CO Ortiz utilized excessive force against him when Ortiz twice pulled Blunt's restraints, Blunt claims that CO Ortiz utilized excessive force in the second instance to retaliate against Blunt for threatening to

write a grievance. (ECF No. 1, PageID.5.) CO Ortiz does not seem to contest that Ortiz took an adverse action against Blunt by pulling on Blunt's restraint straps following the threat. Instead, Ortiz asserts that Blunt was not engaged in protected conduct because he violated a legitimate prison regulation during his escort, and that Blunt has not shown that his threat to file a grievance against Ortiz caused Ortiz to take the adverse action. (ECF No. 32, PageID.110-113.) Ortiz also asserts that Hearing Officer O'Brien's findings preclude Blunt's retaliation claim. (*Id.*) The undersigned disagrees.

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.*

### a. Protected Conduct

It is without dispute that filing a grievance constitutes protected conduct. *Hill*, 630 F.3d at 472. Threats to file grievances are also protected. *Pasley v. Conerly*, 345 F. App'x 981, 984-94 (6th Cir. 2009). "If the grievances are frivolous, however, this right is not protected." *Id.* Prisoners "cannot exercise that right in a manner that violates legitimate prison regulations or penological objectives." *Smith*, 250 F.3d at 1037. "'Abusive or manipulative use of a grievance system [is] not ... protected

conduct,' and prison officials may take action in response to the prisoner's improper use of the grievance process as long as the response aligns with a legitimate penological goal." *Griffin v. Berghuis*, 563 F. App'x 411, 416 (6th Cir. 2014) (quoting *King v. Zamiara*, 680 F.3d 686, 699 (6th Cir. 2012)).

Nothing in the record suggests that Blunt's threat to file a grievance was frivolous. Although the undersigned finds that CO Ortiz did not utilize excessive force *for purposes of an Eighth Amendment claim* against Blunt, it does not follow that a grievance related to the use of force would have been frivolous. *Rayos v. Leavitt*, No. 1:20-cv-968, 2022 WL 873633, at *1 (W.D. Mich. Mar. 24, 2022) (explaining that requiring a grievance to "assert a constitutional right in order to constitute protected conduct . . . is not the proper standard"). There is no dispute as to whether Ortiz pulled Blunt's restraints after Blunt stopped to speak to another staff member; he did. CO Ortiz does not dispute that Blunt threatened to file a grievance against him. And Hearing Officer O'Brien made no specific factual findings with respect to Blunt's alleged threat to file a grievance against Ortiz. Ortiz's reliance on the preclusive effect of the findings is misplaced.

The undersigned concludes that Ortiz has not shown that Blunt's grievance would have been frivolous. Accordingly, the undersigned finds that Ortiz is not entitled to judgment due to lack of protected conduct.

### b.  Causal Nexus

To prevail on a retaliation claim, retaliatory motive "must be a 'but-for' cause [of the injury], meaning that the adverse action against the plaintiff would not have

been taken absent the retaliatory motive." *Nieves v. Bartlett*, 139 S. Ct. 1715, 1721 (2019). The Sixth Circuit employs a burden-shifting approach with regards to the causal requirement:

> Once the plaintiff has met his burden of establishing that his protected conduct was a motivating factor behind any harm, the burden of production shifts to the defendant. If the defendant can show that he would have taken the same action in the absence of the protected activity, he is entitled to prevail on summary judgment.

*Thaddeus-X*, 175 F.3d at 399. CO Ortiz contends that Blunt has not met his initial burden, and that even if he had, Ortiz has demonstrated that he would have taken the same action regardless of Blunt's threat to file a grievance. (ECF No. 32, PageID.112.)

The facts of this case present a close call as to the causal nexus element of Blunt's claim. True, Blunt does not set forth any statements by Ortiz indicating that Ortiz's adverse action was motivated by Blunt's threat to file a grievance. Also true, courts are generally hesitant to find that temporal proximity alone establishes causation. *Hill*, 630 F.3d at 476. But here, the undersigned finds that Blunt's allegation that his threat to file a grievance was immediately followed by Ortiz's use of force is sufficient to create a genuine issue of material fact as to whether Ortiz was motivated by Blunt's threat. *Benison v. Ross*, 765 F.3d 649, 661 (6th Cir. 2014) ("Under some circumstances, close temporal proximity between protected conduct and an adverse action may be sufficient on its own to raise an inference of causation.").

The question, then, is whether CO Ortiz's affidavit denying retaliatory motive, in conjunction with the fact that Blunt admits to stopping during the transport and walking into his cell upon arrival, are enough to satisfy Ortiz's burden of establishing that he would have used force in the absence of Blunt's threat to file a grievance. Construed in the light most favorable to Blunt, the undersigned finds that there is a genuine issue of material fact concerning whether retaliatory motive was the but-for cause of Ortiz's use of force in Blunt's cell.

## VI. Qualified Immunity

CO Ortiz also asserts that he is entitled to summary judgment under the qualified immunity doctrine. (ECF No. 32, PageID.113-114.) "Under the doctrine of qualified immunity, 'government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Phillips v. Roane Cty.*, 534 F.3d 531, 538 (6th Cir. 2008) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Once a defendant raises the qualified immunity defense, the burden shifts to the plaintiff to demonstrate that the defendant officer violated a right so clearly established "that every 'reasonable official would have understood that what he [was] doing violate[d] that right.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). The analysis entails a two-step inquiry. *Martin v. City of Broadview Heights*, 712 F.3d 951, 957 (6th Cir. 2013). First, the court must "determine if the facts alleged make out a violation of a constitutional right." *Id.* (citing *Pearson v. Callahan*, 555

U.S. 223, 232 (1982)). Second, the court asks if the right at issue was "'clearly established' when the event occurred such that a reasonable officer would have known that his conduct violated it." *Id.* (citing *Pearson*, 555 U.S. at 232). A court may address these steps in any order. *Id.* (citing *Pearson*, 555 U.S. at 236). A government official is entitled to qualified immunity if either step of the analysis is not satisfied. *See Citizens in Charge, Inc. v. Husted*, 810 F.3d 437, 440 (6th Cir. 2016).

In applying the first step of the qualified immunity analysis, a court must identify "the specific constitutional right allegedly infringed" and determine whether a violation occurred. *Graham v. Connor*, 490 U.S. 386, 394 (1989). The court considers the state of the law at the second step. As the Supreme Court has observed, "this Court's case law does not require a case directly on point for a right to be clearly established, [but] existing precedent must have placed the statutory or constitutional question beyond debate." *White v. Pauly*, 137 S. Ct. 548, 551 (2017) (internal quotation marks and original brackets omitted) (quoting *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015)). As explained by the Supreme Court:

> To be clearly established, a legal principle must have a sufficiently clear foundation in then-existing precedent. The rule must be "settled law," *Hunter v. Bryant*, 502 U.S. 224, 228, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) (per curiam), which means it is dictated by "controlling authority" or "a robust 'consensus of cases of persuasive authority,' " *al–Kidd, supra*, at 741–742, 131 S.Ct. 2074 (quoting *Wilson v. Layne*, 526 U.S. 603, 617, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999)). It is not enough that the rule is suggested by then-existing precedent. The precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply. *See Reichle*, 566 U.S., at 666, 132 S.Ct. 2088. Otherwise, the rule is not one that "every reasonable

16

> official" would know. *Id.*, at 664, 132 S.Ct. 2088 (internal quotation marks omitted).
>
> The "clearly established" standard also requires that the legal principle clearly prohibit the officer's conduct in the particular circumstances before him. The rule's contours must be so well defined that it is "clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). This requires a high "degree of specificity." *Mullenix v. Luna*, 577 U.S. ——, ——, 136 S.Ct. 305, 309, 193 L.Ed.2d 255 (2015) (per curiam). We have repeatedly stressed that courts must not "define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced." *Plumhoff*, *supra*, at 2023 (internal quotation marks and citation omitted). A rule is too general if the unlawfulness of the officer's conduct "does not follow immediately from the conclusion that [the rule] was firmly established." *Anderson*, *supra*, at 641, 107 S.Ct. 3034. In the context of a warrantless arrest, the rule must obviously resolve "whether 'the circumstances with which [the particular officer] was confronted ... constitute[d] probable cause.'" *Mullenix*, *supra*, at 309 (quoting *Anderson*, *supra*, at 640–641, 107 S.Ct. 3034; some alterations in original).

*District of Columbia v. Wesby*, 138 S. Ct. 577, 589–90 (2018).

CO Ortiz does not argue that he is entitled to qualified immunity because, assuming he violated Blunt's constitutional rights, the rights were not clearly established. Instead, he merely reiterates his position that he did not violate Blunt's constitutional rights. (ECF No. 32, PageID.114.) Retaliating against prisoners for filing, or threatening to file, non-frivolous grievances violates their clearly established First Amendment rights. *Hill*, 630 F.3d at 472 (emphasis added) (citing *Herron*, 203 F.3d at 415). Because the undersigned finds that Blunt's threat to file a grievance was not frivolous, and that there is a genuine issue of material fact concerning

17

whether CO Ortiz would have utilized force regardless of Blunt's grievance, the undersigned recommends that CO Ortiz is not entitled to qualified immunity at this stage of the case.

### VII. Recommendation

The undersigned respectfully recommends that the Court grant CO Ortiz's motion for summary judgment with respect to Blunt's excessive force claims because, construing the evidence in the light most favorable to Blunt, there are no genuine issues of material fact on the question of whether Ortiz utilized reasonable force. The record before the Court indicates that he did. The undersigned further recommends that the Court deny CO Ortiz's motion for summary judgment with respect to Blunt's retaliation claim because there is a genuine issue of material fact concerning whether retaliatory motive was the but-for cause of CO Ortiz's use of force in Blunt's cell. If the Court accepts this recommendation, Blunt's retaliation claim against CO Ortiz will remain.

Dated: August 5, 2022                           /s/ *Maarten Vermaat*
                                                MAARTEN VERMAAT
                                                U. S. MAGISTRATE JUDGE

**NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C) Fed. R. Civ. P. 72(b). All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to file timely objections may constitute a waiver of any further right of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).